**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CRANEVEYOR CORPORATION, | ) | CV 16-6049-RSWL-Ex |
| | ) | |
| Plaintiff, | ) | **ORDER re: APPLICATION** |
| | ) | **FOR DEFAULT JUDGMENT** |
| | ) | **AGAINST DEFENDANT AMK** |
| v. | ) | **EXPRESS, INC.** [15] |
| | ) | |
| AMK EXPRESS INC. and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Craneveyor Corporation ("Plaintiff") hired Defendant AMK Express, Inc. ("Defendant") to transport two hoists and ten end trucks from Michigan to California. The goods arrived in California damaged by rust and salt, and the present Action ensued. Currently before the Court is Plaintiff's Application for Default Judgment by Court Against Defendant ("Motion" or "Motion for Default Judgment") [15].

1

1  Having reviewed all papers submitted pertaining to this
2  Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the
3  Court **GRANTS** Plaintiff's Motion and enters default
4  judgment against Defendant as to all claims.  The Court
5  awards $38,785.50 in damages to Plaintiff, along with
6  costs.

## I. BACKGROUND

### A.  Factual Background

Plaintiff is a California corporation with offices in Los Angeles.  Compl. ¶ 2, ECF No. 1.  Plaintiff sells and distributes hoists and end trucks for use in free-standing crane systems.  Id. at ¶ 9.  It also purchases new hoists and end trucks for its own use.  Id. at ¶ 10.  Defendant is an Illinois corporation that regularly conducts business in California.  Id. at ¶¶ 3-4.  Defendant is a common carrier pursuant to the Interstate Commerce Commission ("ICC").  Id. at ¶ 14.

In January 2015, Plaintiff purchased brand new, perfect condition hoists and end trucks from Detroit Hoist and Crane.  Id. at ¶¶ 11, 16.  Plaintiff hired Defendant to ship the hoists and end trucks via Defendant's truck from Sterling Heights, Michigan to South El Monte, California, where Plaintiff's business is located.  Id. at ¶¶ 12, 13.  The load was a "dedicated load," exclusively containing Plaintiff's hoists and end trucks.  Id. at ¶ 17.  Plaintiff also entered into a separate agreement to resell the hoists and end trucks after their arrival.  Id. at ¶ 21.

Plaintiff avers that Defendant got into a crash somewhere in transit, damaging the goods. <u>Id.</u> at ¶ 20. As a result, the goods were damaged upon arrival at Plaintiff's facility. <u>Id.</u> Defendant allegedly failed to protect the hoists and end trucks with tarp and other protective materials. <u>Id.</u> at ¶ 18. Indeed, Plaintiff discovered unused tarps in Defendant's truck, suggesting it did not protect the goods. <u>Id.</u> Moreover, Defendant tried to conceal the damage by spraying the goods with WD-40 before arriving in South El Monte. <u>Id.</u> at ¶ 19. Consequently, Plaintiff incurred costs for evaluating the goods' damages and was deprived of their resale value. <u>Id.</u> at ¶¶ 22, 23.

**B.  Procedural Background**

Plaintiff filed a Complaint on August 12, 2016, alleging violation of the Carmack Amendment, 49 U.S.C. § 14706, for damage to Plaintiff's new hoists and end trucks on the journey from Michigan to California. <u>Id.</u> at ¶¶ 26-32. On August 19, 2016, Plaintiff served the summons and complaint on Defendant in Aurora, Illinois. Proof of Service, ECF No. 8. Defendant did not appear or otherwise respond to the Complaint.[1] On October 5, 2016, Plaintiff requested the Clerk to enter default against Defendant. ECF No. 12. On October 6, 2016, the Clerk entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 13.

---

[1] The Answer was due on September 9, 2016, but Defendant allowed this deadline to lapse. <u>See</u> Fed. R. Civ. P. 12.

Plaintiff filed the instant Motion on November 30, 2016. The Opposition was due on December 13, 2016, but none was filed.

## II. DISCUSSION

**A.** **<u>Legal Standard</u>**

The granting of Default Judgment is within the discretion of the district court. <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980); <u>see</u> Fed. R. Civ. P. 55. There are both procedural and substantive requirements that must be met.

Procedurally, the requirements set forth in Federal Rules of Civil Procedure 54(c) and 55(b), and Local Rule 55-1 must be met. <u>See</u> <u>Vogel v. Rite Aid Corp.</u>, 992 F. Supp. 2d 998, 1006 (C.D. Cal 2014). Local Rule 55-1 provides: "When an application is made to the Court for a default judgment, the application shall be accompanied by a declaration in compliance with F.R.Civ.P. 55(b)(1) and/or (2) and include the following: (a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Service Members Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (e) That notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2)." L.R. 55-1.

Courts should also consider the following factors in determining whether to grant a motion for default judgment: "(1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

If the court determines that the defendant is in default, "'the factual allegations of the complaint, other than those relating to damages, are taken as true.'" Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)). Additionally, "[w]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

If the Court determines that the allegations in the complaint are sufficient to establish liability, the plaintiff must provide proof of all damages sought in the complaint, and the Court must determine the "amount and character" of the relief that should be awarded.

Id. at 1005-06 (citations omitted); PepsiCo, 238 F. Supp. 2d at 1175.  Federal Rule of Civil Procedure 54(c) requires that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

**B.   Analysis**

    1.   Jurisdiction and Service of Process

In considering whether to enter default judgment against Defendant, the Court must first determine whether it has jurisdiction over the subject matter and the parties to the case.  In re Tuli, 172 F.3d at 712.

        a.   *Subject Matter Jurisdiction and Personal Jurisdiction are Proper*

The Court has subject matter jurisdiction over the sole Carmack Amendment claim pursuant to 49 U.S.C. § 14706(d), which enforces liability under receipts and bills of lading for goods damaged during transit. Section 14706(d) permits a civil action against the delivering carrier or carrier responsible for the loss in a United States district court.  49 U.S.C. § 14706(d)(1),(2).  Because a federal claim is stated, the Court has federal question jurisdiction per 28 U.S.C. § 1331.

California state law applies if there is no applicable federal statute controlling personal jurisdiction.  Panavision Int'l v. Toeppen, 141 F.3d 1316, 1320 (9th Cir.1998) (citation omitted).  Pursuant to California Code of Civil Procedure section 410.10,

California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Thus, exercise of personal jurisdiction is proper so long as the Due Process Clause is satisfied. See Panavision, 141 F.3d at 1320. "Due process requires that a defendant have minimum contacts with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " Brainerd v. Gov. of the Univ. of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989) (quotation omitted). Personal jurisdiction is based on either specific or general jurisdiction. Panavision, 141 F.3d at 1320.

The Court has personal jurisdiction over Defendant. Although Defendant is an Illinois corporation with business offices in DuPage County, Illinois, Compl. ¶ 3, it regularly conducts business in California. Id. at ¶ 4; see Lee Smalley Edmon et al., California Practice Guide: Federal Civil Procedure Before Trial § 3:210.2 (2016) ("[A] corporation incorporated outside California is subject to personal jurisdiction here if 'minimum contacts' exist between it and California.")

      b.  *Service of Process is Proper*

Service of process is met because Plaintiff served Defendant with the Summons and Complaint on August 19, 2016, as evidenced by the Proof of Service [8]. Plaintiff served the Summons and Complaint on Alim Kuchiev, Defendant's alleged president/owner, by

"delivering a copy of the summons and of the complaint on the individual personally," Fed. R. Civ. P. 4(e)(2)(A), in compliance with Federal Rule of Civil Procedure 4(h)(1)(A).[2]

### 2. Procedural Requirements

Plaintiffs have satisfied the procedural requirements for default judgment pursuant to Federal Rules of Civil Procedure 55 and Local Rule 55-1. Under Federal Rule of Civil Procedure 55(a), the Court Clerk properly entered default against Defendant on October 6, 2016 [13]. ECF No. 13. Plaintiff properly moved pursuant to Rule 55(b) for entry of default judgment [15].

Local Rule 55-1 also asks Plaintiff to provide the following in an application for default judgment: (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) notice has been served on the defaulting party.

Plaintiff has satisfied each of these requirements. The Court Clerk entered default judgment against Defendant as to the Complaint on October 6, 2016 [13]. Decl. of Randall Guritzky ("Guritzky Decl.") ¶ 4.

---

[2] "[A] domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served . . . in the manner prescribed by Rule 4(e)(1) for serving an individual."

8

Defendant is neither a minor, nor an incompetent person nor in the military service or otherwise exempted under the Soldier's and Sailor's Civil Relief Act of 1940, the predecessor to the Servicemembers Civil Relief Act. App. for Default Judgment ("App.") 2:4-6.  Finally, Defendant was served with notice of this Motion on November 30, 2016 [16].

    3.   <u>Eitel Factors</u>

In support of its Motion, Plaintiff has sufficiently set forth "(1) the possibility of prejudice to plaintiffs; (2) the merits of plaintiffs' substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendants' default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits."  <u>Eitel</u>, 782 F.2d at 1471-72.

    a.   *Risk of Prejudice to Plaintiff*

The first <u>Eitel</u> factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered.  <u>Vogel</u>, 992 F. Supp. 2d at 1007. Plaintiff argues that it would suffer prejudice without Default Judgment because Defendant has stated that it cannot and will not pay for Plaintiff's damages.  App. 6:26-27.  Absent entry of default judgment, Plaintiff will remain uncompensated for the damages sustained from its destroyed property.  <u>Mitsui O.S.K. Lines, Ltd.</u>

v. Allied Transp. Sys. (USA), Inc., No. 10-cv-5586-SC, 2013 WL 2467701, at *2 (N.D. Cal. June 7, 2013) ("[W]here default has been entered against a defendant, a plaintiff has no other alternative by which to recover damages.")

Plaintiff also risks prejudice because Defendant has failed to answer the Complaint. Entering Default, rather than allowing Defendant to prolong litigation, is necessary to mitigate Plaintiff's losses. Fulton v. Bank of America N.A., No. 2:16-cv-04870-CAS(JCx), 2016 WL 7156440, at *3 (C.D. Cal. Dec. 6, 2016) (plaintiff is without other recourse for recovery if defendant has not appeared or defended the suit).

### b. *Sufficiency of the Complaint and Likelihood of Success on the Merits*

The second and third Eitel factors consider the merits of the plaintiff's substantive claims and the sufficiency of the complaint. "Under an [Eitel] analysis, [these factors] are often analyzed together." Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F. Supp.2d 1038, 1048 (N.D. Cal. 2010). Plaintiff has asserted a meritorious claim for violation of the Carmack Amendment, 49 U.S.C. § 14706.

The Carmack Amendment, part of the Interstate Commerce Act, governs "a motor carrier's liability to a shipper for the loss of, or damage to, an interstate

///
///

shipment of goods."[3] <u>Waller v. Gary & Koby Transp. Inc. DBA Best Quality Movers</u>, No. 1:08-cv-00725 AWI GSA, 2008 WL 4224722, at *4 (E.D. Cal. Sept. 15, 2008). Under the Carmack Amendment, shippers can recover for actual losses or property injury caused by common carriers during shipment. <u>Id.</u>  To plead a viable Carmack Amendment claim, the Plaintiff must establish: "(1) delivery of the goods to the initial carrier in good condition,(2) damage of the goods before delivery to their final destination, and (3) the amount of damages." <u>Id.</u> (citations omitted).

From the four corners of the Complaint, Plaintiff has alleged these elements. The hoists and end trucks were new and in perfect condition prior to shipment. Compl. ¶ 16; Guritzky Decl. ¶ 6, ECF No. 15-1. Upon delivery, they were substantially damaged, <u>id.</u> at ¶ 20, and Plaintiff sustained damages totaling $38,785.50. Guritzky Decl. ¶ 15. Plaintiff's submitted exhibits and documentation also reveal likely success on its Carmack Amendment claim. Plaintiff has extensive

---

[3] 49 U.S.C. § 14706(a)(1) provides: "A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part . . . The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination."

11

evidence supporting the "damaged goods" element. According to Robert Norland, Operations Manager and Plaintiff's Sales Manager, the hoists and end trucks that arrived to the El Monte facility were covered with rust moisture and road salt. Decl. of Robert Norland ("Norland Decl.") ¶ 3, ECF No. 15-2. Plaintiff has attached twenty seven photographs evidencing said damage. Norland Decl. Ex. A. Moreover, Norland's Claim Report, filed on February 11, 2015, indicates extensive salt-water damage under welds and inside load-bearing tube steel frames, leading to severe corrosion. Guritzky Decl. Ex. A at 2.

In the February 3, 2015 Bill of Lading, Plaintiff noted road salt damage from Defendant's failure to tarp the load as well as hoist damage at the rope drums and cables. Id. at 3. Additionally, Joseph Bartels, the VeriClaim, Inc. Marine Surveyor who inspected the goods on February 18, 2015, noted that "rust had spread along the raw untreated steel services, electrical and cable." Decl. Of Joseph Bartels ("Bartels Decl.") ¶ 4, ECF No. 15-3. Disassembly of the end trucks and wheel bearings removal also revealed water marks and rust. Bartels Decl. Ex. A. And test results were positive for chlorides, showing that salt had touched the load. Id. at 3, 6-21.

Plaintiff also plausibly alleges a damages amount associated with the damaged equipment, totaling

$38,785.50.[4] App. 2:11. This amount represents money spent repairing and reconditioning the hoists and end trucks and materials purchased for repairs. Id. at 6:8-24. Effectively, Plaintiff makes out a prima facie case for a Carmack Amendment violation: the goods began in new condition, arrived damaged, and a damages amount ensued. Intercargo Ins. Co v. Burlington N. Santa Fe R.R., 185 F. Supp. 2d 1103, 1111 (C.D. Cal. 2001).

      c.  *The Sum of Money at Stake in the Action*

"Under the [fourth] Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, 238 F. Supp. 2d at 1176. "While the allegations in a complaint are taken to be true for the purposes of default judgment, courts must make specific findings of fact in assessing damages." Moroccanoil, Inc. v. Allstate Beauty Prod., Inc., 847 F. Supp. 2d 1197, 1202 (C.D. Cal. 2012). The Court will review declarations, calculations, and other damages documentation to determine whether the sum of money at stake is appropriate. HICA Educ. Loan Corp. v. Warne, No. 11-

---

[4] The Court notes that the damages pled in the Complaint, $120,000, differ from the $38,785.50 currently sought. Compl. ¶ 31. Although "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment," Fed. R. Civ. P. 54(c), the Court permits Plaintiff to recover this amount that is approximately one-third less than the amount originally sought. Moreover, Plaintiff alleged entitlement to actual loss and property damages in the Complaint, putting defendant on notice of these damages. Xerox Corp. v. A&M Printing, No. CV 12-00043 MMM (Ex), 2013 WL 2180927, at *6 (C.D. Cal. May 20, 2013).

CV-04287-LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012).

Plaintiff requests $38,785.50 for damages and repairs arising from Defendant's failure to properly secure and protect its goods. App. 6:8-9. This total stems from $36,128.50 for 380.3 hours spent on repairs and $2,657 for chemical-removing materials, for load cables, and to timely complete the repairs. App. 6:17-24. Plaintiff also avers that it spent $1,156.34 for VeriClaim, Inc.'s investigation of Plaintiff's damages, but apparently does not include this amount in its requested damages. Bartels Decl. ¶ 7, Ex. C.

The Carmack Amendment "makes a carrier covered by the [Interstate Commerce Act] liable for damages it causes to property it transports in the amount of the 'actual loss or injury to the property.'" Contempo Metal Furniture Co. of Cal. v. E. Tex. Motor Freight Lines, Inc., 661 F.2d 761, 764 (9th Cir. 1981) (quoting 49 U.S.C. 14706(a)(1)). While actual loss damages are typically calculated by the "difference between the market value of the property in the condition in which it should have arrived at its destination and its market value in the condition in which it did arrive," id., the cost of repair—if less than market value—is another apt measure of damages. Dutch Enters., Inc. v. Consol. Freightways, Inc., Civ. No. 93-1686 CW (FSL), 1994 WL 835069, at *3-4 (N.D. Cal. July 13, 1994). The shipper may recover repair costs, so long as they are

14

less than the goods' market value.

Here, the repair costs of $38,785.50 are not only authorized as actual losses under the Carmack Amendment and less than the goods' fair market value of $118,000, but they are appropriately tailored to the egregiousness of Defendant's conduct. App. 6:8. Defendant drove the goods—which had a fair market value of $118,000—across country in winter weather without a tarp to protect them, attempted to mask the damage by applying WD40 spray and by sanding the goods, refused to sign a delivery receipt acknowledging damages, and failed to apprise Plaintiff that Defendant's insurance carrier had denied Plaintiff's claim. App. 4:24-27, 6:8; Norland Decl. ¶ 4; Guritzky Decl. Ex. A at 2. Thus, this factor counsels towards granting default judgment.

        d.  *The Possibility of a Dispute Concerning the Material Facts*

The fifth <u>Eitel</u> factor examines the likelihood of dispute between the parties regarding the material facts in the case. A defendant is "deemed to have admitted all well-pleaded factual allegations" in the Complaint upon entry of default. <u>DirecTV, Inc. v. Hoa Huynh</u>, 503 F.3d 847, 851 (9th Cir. 2007). Although factual allegations relating to the damages amount are not taken as true, <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977), the Carmack Amendment leaves little room for dispute that a motor carrier is

liable for actual property loss or damage.  49 U.S.C. § 14706(a)(1) ("[L]iability . . . is for the actual loss or injury to the property . . . .")  And Plaintiff has adequately alleged that Defendant caused actual damage to its brand-new hoists and end trucks.

    Above all else, a dispute concerning the material facts is unlikely.  Defendant has failed to appear in this case since the Complaint was filed in August 2016, let alone contradict the allegations that it substantially damaged Plaintiff's goods on the drive from Michigan to California, as set forth in Bartels's Marine Cargo Survey investigation Report and attached photographs.  <u>IO Grp., Inc. v. Jordon</u>, 708 F. Supp. 2d 989, 999-1000 (N.D. Cal. 2010)(factor weighed towards granting default judgment where Defendant appeared in the action and filed three documents, but did not contradict the evidence that his website reproduced Plaintiff's copyrighted works).  This factor weighs in favor of granting default judgment.

        e.   *Whether Defendant's Default was the Product of Excusable Neglect*

    Excusable neglect takes into account factors like "prejudice . . . , the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  <u>J.L. v. Moreno Valley Unified Sch. Dist.</u>, No. CV 09-1978 ODW (PJWx), 2010 WL

16

1708839, at *1 (C.D. Cal. Apr. 20, 2010) (internal quotation marks omitted) (quoting <u>Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.</u>, 507 U.S. 380, 395 (1993)). The possibility of excusable neglect is remote here, as Defendant was properly served with the summons, Complaint, and instant Motion, indicating that it had proper notice of the action. <u>See</u> <u>Shanghai Auto. Instrument Co. v. Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because defendants were properly served with the complaint, notice of entry of default, and papers in support of motion for default judgment). Moreover, Defendant has made no attempt to appear, respond, or otherwise defend itself in this action, let alone furnish an excuse for this evident neglect. <u>Landstar Ranger, Inc. v. Parth Enters. Inc.</u>, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

     f.  *The Strong Public Policy Favoring Decisions on the Merits*

Although there is a strong policy underlying the Federal Rules of Civil Procedure, which favors decisions on the merits "whenever reasonably possible," <u>Eitel</u>, 782 F.2d at 1427, "this preference, standing alone, is not dispositive." <u>Vogel</u>, 992 F. Supp. 2d at 1013 (citations and quotations omitted). In deciding to grant default judgment, the court in <u>PepsiCo</u> noted: "Defendant's failure to answer the Complaint makes a decision on the merits impractical, if not impossible."

17

238 F. Supp. 2d at 1177. Here, the substantive claims cannot be adjudicated, as Defendant has not answered the Complaint. Am. Auto. Assoc., Inc. v. H&H Towing Serv., 2016 WL 1449535, at *8 (C.D. Cal. April 11, 2016). Thus, the seventh factor does not preclude entry of default judgment.

   g. *Conclusion Regarding Eitel Factors*

Accordingly, because all Eitel factors weigh in favor of entering default judgment, the Court **GRANTS** Plaintiff's Motion for Default Judgment [15] against Defendant as to the sole Carmack Amendment claim.

  4. <u>Character and Amount of Plaintiff's Recovery</u>

Turning to specific amount of damages requested, the Court finds the $38,785.50 appropriate. Plaintiff seeks two separate amounts for repair jobs completed on the damaged goods. Plaintiff argues that it took "immediate action" to mitigate its damages, working on original job number 414176 for 138.2 hours at a shop rate of $95.00/hour, totaling $13,129. App. 6:13-18; Norland Decl. ¶ 11. Plaintiff opened this job while in the interim it set up a full job to record the time to complete the repairs. Id. Job 415222 recorded the remainder of time spent on the repairs: 242.1 hours at a shop rate of $95.00/hour, totaling $22,999.50. Id. at ¶ 12.

To substantiate this amount, Plaintiff submits the Declaration of Robert Norland, Plaintiff's Operations Manager and Crane Sales Manager who personally engaged

in and supervised efforts to treat and remove rust from the damaged goods. Id. at ¶ 9. The declaration, attached photographs, and invoices set forth the extensive cleaning process, including disassembling, inspecting, cleaning, and polishing 20 wheels, 20 axle shafts, 40 bearing caps, and 90 sealed double roller bearings for 10 different end trucks. The declaration also describes the complex process for reconditioning the hoists, using load cables, rust removing chemicals, and abrasives. In total, 380.3 hours, at the rate of $95/hour, were spent on this repair process, totaling $36,128.50. The costs of the materials used, as stated in Norland's Declaration, totaled $2,657. Norland Decl. ¶ 15. Although the initial damages quote was $117,466.57, Bartels Decl. Ex. B at 1, Plaintiff mitigated its damages to the requested amount. Plaintiff has thus demonstrated it is entitled to the requested $38,785.50 in damages for repairing the hoists and end trucks.

### III. CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Default Judgment [15].

///
///
///
///
///
///

```
1  The Court enters default judgment as to Defendant for
2  the sole Carmack Amendment claim.  The Court also
3  awards $38,785.50 in damages plus costs.
4  IT IS SO ORDERED.
```

DATED: January 10, 2017          s/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge